## Price's Estate.

*Wills—Construction—Gifts for life distinguished from absolute interests.*

Testator left his residuary estate to his executors in trust "to appropriate and apply" the net income "towards the support and maintenance" of his children and grandchildren in such manner as might best tend to their comfort and support. He then bequeathed one equal fifth part "to the family of my son J., himself, his wife and his children during their respective lives." On the death of M., the sole survivor of J.'s immediate family, her executor claimed one-fifth of the future income during the life of the trust, the trust itself terminating only on the death of all the testator's children—two of them still surviving. The Auditing Judge disallowed the claim: *Held* no error.

Exceptions to adjudication. O. C. Phila. Co., Oct. T., 1881, No. 289.

The provisions of the will and facts appear in the following extract from the adjudication of THOMPSON, J., Auditing Judge:

"This trust arose under the will of testator, who died July 8, 1865, a widower, whereby he gave the residue of his estate to his executors as trustees to invest, etc., and to appropriate and apply the net rents, interest, profits and dividends thereof towards the support and maintenance of my children and grandchildren in such way and manner as in their judgment and opinion may best tend to their comfort and support; that is to say, one equal fifth part to the family .of my son, Joshua L. Price, himself, his wife and his children. . . .

### Jacob v. Hepner.

" 'My Executors shall not be superseded in said Trust or its duties by any Guardian or other person whomsoever during the minority of any of my grandchildren or great-grandchildren so long as this Trust may last; but may, through any parent or guardian, apply the income for the use of any minor. My Will and directions are intended to apply not only to grandchildren who are now born, but to such as shall be hereafter born, as well as to great-grandchildren. . . .'

"The present accounting is by the substituted trustees, and is filed because of the death of Marion S. Price, a granddaughter, who, as the last surviving child of testator's son Joshua, enjoyed in her lifetime one-fifth of the income, and to determine the question of her further interest therein.

"At the time testator made his will there were living his five children named therein. Elizabeth P. Parrish, another child of testator, was then deceased, leaving a daughter, Lydia W. Parrish, who is spoken of in the brief of counsel as a stepdaughter of his daughter Sarah L. Parrish, and is included in the provision for Sarah L. Parrish, her husband and children.

"All of testator's children named in the will survived him, but it does not appear whether the husband of Sarah L. Parrish or of Rebecca P. Hunt was living at the time of testator's death.

"Two of testator's children, Sarah L. Parrish and Rebecca P. Hunt, are still living, and the trust continues.

"Testator's daughter Margaret died Jan. 24, 1891, leaving surviving her husband, who died Jan. 7, 1902, and an only child, Lydia L. Price, who is living and of full age.

"Testator's daughter, Anna P. Richardson, died Jan. 29, 1890, leaving three children, Anna P. R. Kirkland, Edward C. Richardson and T. Chesley Richardson. Anna P. R. Kirkland died March 18, 1899, leaving surviving her husband, who died May 10, 1910, and an only child, Frederic Richardson Kirkland, who is still living and of full age. Edward C. Richardson died April 18, 1909, without issue, but leaving surviving his widow, Alice M. Richardson, who is still living. T. Chesley Richardson died Sept. 5, 1924, leaving an only child, T. Chesley Richardson, Jr., who is still living and of full age.

"His granddaughter, Lydia W. Parrish, died Dec. 27, 1924, and the Fidelity Trust Company is executor of her will.

"Testator's son Joshua died March 10, 1867, leaving him surviving his widow, who died Jan. 24, 1893, and four children, of whom Mary died in 1888, Fannie in 1893, Harry in 1901, all intestate, unmarried and without issue, and Marion S. Price, who died Jan. 11, 1925, unmarried and without issue. At the time of her death Marion S. Price enjoyed the fifth share of income given for testator's son Joshua and his family; and Mr. Lewis, for the executor of her will, claimed this share of income during the remaining term of the trust.

"Claim was also presented by Alice M. Richardson, who, as the widow of Edward C. Richardson, claimed the share of income which her husband had been enjoying in his lifetime.

"Both claims were objected to.

"A careful examination of the will discloses clearly that testator intended to dispose of income and principal separately and independently. He did not give the income to his beneficiaries immediately or directly, but directed his trustees 'to appropriate and apply' the income 'towards the support and maintenance of my children and grandchildren in such way and manner as in their judgment and opinion may best tend to their comfort and support;' and, further, 'to apply the said income,' 'whether by payment directly to my

Price's Estate.

children, or to or for the use of their wives, husbands or children; so that it may be applied to the support and maintenance of their families,' and not subject to debts, &c.; and he declares that his 'will and directions are intended to apply not only to grandchildren who are now born, but to such as shall be hereafter born, as well as to great-grandchildren.' After this appropriation and application of income was to be in equal fifths to his children named, their spouses and children, including, in the case of his daughter Sarah, his granddaughter Lydia.

"Taking the will as a whole, it is to my mind clear that the testator was actuated by patriarchal motives with respect to income. He intended to provide support and maintenance for his beneficiaries by groups or families— children, spouses, grandchildren and great-grandchildren. So long as the trust continues, the living members or member of the respective families of his children are to enjoy the benefit of a fifth of the income; and, on the other hand, if the line of any of his children become extinct while the trust endures, then the income provided for that family should be added to the income provided for the surviving families.

"After designating the lines of beneficiaries, he proceeds to fix the term of enjoyment and to provide for substitutions in case any of the beneficiaries died during the term of the trust. The ambiguities of the will, if there are any, arise from the fact that the testator used pronouns, and it is difficult to fix their antecedents with exactness. He says the income shall be appropriated and applied to the persons named and described 'during their respective lives.' To construe the word 'their' according to grammatical rules as referring to testator's children, their spouses and their children, it is conceded, would infringe the rule against perpetuities, and an intention to violate the rule cannot be presumed. And to construe the pronoun as referring to children only would cut out a spouse who survived the survivor of his children. That, however, is not a live question, as the wife of the son and the husbands of the daughters are all deceased. And it cannot include grandchildren, for whether, as events happen, grandchildren enjoy income under the trust or not, the moment the trust ends income therefrom ends, and the grandchildren take principal with all its incidents.

"Nor can the pronoun 'them' in the phrase 'unto the child or children of any of them' include spouses of his children, for he certainly did not intend the children of spouses by prior or subsequent marriage to take anything. It must, therefore, mean 'my children'—'unto the child or children of any of my children'—that is, testator's grandchildren. And the pronoun 'them' in the phrase 'until the survivor of them,' cannot mean grandchildren, for such construction, as already stated, would violate the rule against perpetuities. It must mean the persons whose lives determine the life of the trust. And the word 'any' in the clause 'if any are deceased leaving no child then living' cannot be construed literally, for such construction would cut down the support of surviving members of a given family, and testator expressly gives one-fifth of the income for such family during the trust. It must, therefore, mean 'all the children of any of my children.'

"The clause is an omnibus clause for the purpose of carrying out testator's intention to provide support for the families of testator's children, and not to restrict or defeat such intention. To my mind, this clause of the will may be paraphrased thus: 'During the *parents*' respective lives; and unto the child or children of any of the *grandchildren* which shall be deceased, until the decease of the survivor of *my children and their spouses*, the child or children of any deceased to take the share their parent would have taken, and if more

Price's Estate.

than one, in equal shares; but if *all the children of any of my children* are deceased leaving no child then living, his or her share shall be added to the survivors of my children and the issue of any of them deceased.' Thus read, the will becomes clear, intelligible and harmonious, and carries out testator's express intention to provide for the support of his children and families as groups of beneficiaries.

"And this, it would seem, was the interpretation put upon the will heretofore in distribution of income; for, after the death of Joshua and his widow, the income to be enjoyed by his family was given to his surviving children, and finally all to the last surviving child, Marion.

"It was argued that this was done because Marion was the person entitled under the intestate laws to the estates of her mother and her three sisters; but, to my mind, it was because of an interpretation of the will, which has been shown correct by the subsequently decided case of Rowland's Estate, 141 Pa. 553, followed in Huddy's Estate, 257 Pa. 528, and Maxwell's Estate, 261 Pa. 140.

"It was argued, too, that, as the testator unquestionably gave principal to his grandchildren, without any divestiture except in favor of great-grandchildren should a grandchild die during the period of the trust, it is natural to suppose that a vested interest income follows the vested interest in principal. Undoubtedly, when grandchildren come into enjoyment of the principal, their interest in the income therefrom follows. But a vested interest in principal in remainder does not, *ipso facto*, give an absolute and indefeasible interest in income during the pendency of the trust. Distribution of such income is governed by the terms of the trust.

"Without anticipating a construction of the will as to principal, it may be remarked that the only condition of taking principal is that the taker be a grandchild in existence at testator's death or subsequently born. But there is no relation under the terms of this will between the principal of the trust and the income accrued during its continuance, so far as the disposition of principal in remainder is concerned. Principal and income are separately and independently disposed of, and participation in principal at the termination of the trust is not conditioned in any way on participation in income during the trust's continuance, as in Freeman's Estate, so frequently before the appellate courts, and finally disposed of in 281 Pa. 190. There, only the persons receiving or entitled to the income immediately prior to the death which terminated the trust were to share in principal, while here testator expressly declares that principal shall be divided equally among his grandchildren, including his granddaughter Lydia, born or to be born, without regard to the number of children each of his children might have, or the quantity of income any grandchild might have theretofore enjoyed.

"Entertaining those views, the claim of the executor of testator's granddaughter, Marion S. Price, and the claim of Alice M. Richardson, widow of testator's grandson, Edward C. Richardson, must be rejected. I feel, however, that I should add, as to the latter, that the same claim was made at the audit of a prior account and rejected by Gest, J., for the reasons set out in his adjudication, in which reasons I fully concur."

Exceptions were taken by the executor of Marion S. Price.

*Thomas S. Williams* and *Joseph T. Bunting*, for accountant.

*William Draper Lewis*, contra.

LAMORELLE, P. J., July 3, 1925.—As we read the will, the interest which testator's five children, their respective spouses and their children, had in the

income was but an equitable life estate, which necessarily terminated when and as they died. Richard Price left his residuary estate to his executors, in trust "to appropriate and apply" the net income "towards the support and maintenance" of his children and grandchildren in such manner as might best tend to their comfort and support. This alone would indicate a life interest, but, after stating that one equal fifth goes "to the family of my son Joshua L. Price, himself, his wife and his children," testator adds the significant words "during their respective lives. . . ."

Marion S. Price, the sole survivor of the immediate family of Joshua L. Price, recently died; whereupon the executor of her will claimed a one-fifth of further income during the life of the trust, which trust terminates only when all of testator's five children are dead, and two of them are now living.

The Auditing Judge in a logical and analytical opinion gave convincing reasons for the rejection of the claim, and, as we concur therein, we see no necessity for further elaboration.

Accordingly, all exceptions are dismissed and the adjudication is confirmed absolutely.